**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | § | |
|---|---|---|
| **IN RE:** | § | **CASE NO: 23-11868** |
| | § | |
| **TRIMONT ENERGY (NOW), LLC,[1]** | § | **CHAPTER 11 SubChapter V** |
| | § | |
| **DEBTOR.** | § | **SECTION A** |
| | § | |

| | § | |
|---|---|---|
| **IN RE:** | § | **CASE NO: 23-11869** |
| | § | |
| **TRIMONT ENERGY (GIB), LLC,** | § | **CHAPTER 11 SubChapter V** |
| | § | |
| **DEBTOR.** | § | **SECTION A** |
| | § | |

| | § | |
|---|---|---|
| **IN RE:** | § | **CASE NO: 23-11872** |
| | § | |
| **TRIMONT ENERGY LIMITED, INC.,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | **SECTION A** |
| | § | |

| | § | |
|---|---|---|
| **IN RE:** | § | **CASE NO: 23-11873** |
| | § | |
| **WHITNEY OIL & GAS, LLC,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | **SECTION A** |
| | § | |

**FOURTH INTERIM ORDER (I) AUTHORIZING USE OF CASH**
**COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III)**
**MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FIFTH**
**INTERIM HEARING; AND (V) GRANTING RELATED RELIEF**

The Court held a hearing on January 16, 2024, to consider the *Emergency Motion for Entry*

*of Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for*

---

[1] Trimont Energy (NOW), LLC (Case No. 23-11868); Trimont Energy (GIB), LLC (Case No. 23-11869); Trimont Energy Limited, Inc. (Case No. 23-11872); and Whitney Oil & Gas, LLC (Case No. 23-11873) have moved for joint noticing procedures.

*Interim and Final Orders: (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Scheduling and Approving the Form and Method of Notice for a Final Order; and (4) for Related Relief* (the "Motion")[2], [Case No. 23-11868, ECF Doc. 16; Case No. 23-11869, ECF Doc. 16; Case No. 23-11872, ECF Doc. 15; Case No. 23-11873, ECF Doc. 15], filed by Trimont Energy (NOW), LLC ("NOW"), Trimont Energy (GIB), LLC ("GIB"), Trimont Energy Limited, Inc. ("TEL"), and Whitney Oil & Gas, LLC ("Whitney"), as debtors and debtors-in-possession (collectively, the "Debtors"), moving pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3001, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the local rules of the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Local Rules") for entry of a fourth interim order (this "Fourth Interim Order"), among other things:

     (i)     Authorizing Whitney, NOW, and GIB (collectively, the "Cash Collateral Debtors") to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), of STUSCO and the LOWLA Lienholders (both as defined below), on an interim basis and solely in accordance with the terms of this Fourth Interim Order;

     (ii)     Granting adequate protection to STUSCO and the LOWLA Lienholders, pursuant to sections 361 and 363 of the Bankruptcy Code, for any diminution in the value of their respective interests in the Prepetition Collateral (defined below) resulting from the Cash Collateral Debtors' use of the Cash Collateral;

     (iii)     Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Cash Collateral Debtors, STUSCO, and the LOWLA Lienholders to implement and effectuate the terms and provisions of the *Interim Order* [Case No. 23-11868, ECF Doc. 37; Case No. 23-11869, ECF Doc. 36; Case No. 23-11872, ECF Doc. 33; Case No. 23-11873, ECF Doc. 34] (the "First Interim Order"), the *Second Interim Order* [Case No. 23-11868, ECF Doc. 105; Case No. 23-11869, ECF Doc. 93; Case No. 23-11872, ECF Doc. 87; Case No. 23-11873, ECF Doc. 104 (the "Second Interim Order"), the *Third Interim Order* [Case No. 23-11868, ECF Doc. 129; Case No. 23-11869, ECF Doc. 114; Case No. 23-11872, ECF Doc. 108; Case No. 23-11873, ECF Doc. 128 (the "Third Interim Order"), and this Fourth Interim Order; and

---

[2]     Except as otherwise noted, capitalized terms used by not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(iv)     Granting related relief.

The Court having reviewed the Motion and the *Declaration of Christopher O. Ryals in Support of First Day Motions*, [Case No. 23-11868, ECF Doc. 15; Case No. 23-11869, ECF Doc. 15; Case No. 23-11872, ECF Doc. 14; Case No. 23-11873, ECF Doc. 14] (the "Ryals Declaration") filed contemporaneously with the Motion, and the evidence submitted or adduced and the arguments of counsel made at the hearing held on October 31, 2023 (the "First Interim Hearing"), the hearing held on November 16, 2023 (the "Second Interim Hearing"), the hearing held on December 21, 2023 (the "Third Interim Hearing"), the hearing held on January 16, 2024 (the "Fourth Interim Hearing"), and together with the First Interim Hearing, the Second Interim Hearing, and the Third Interim Hearing, the "Interim Hearings"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consent to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, the estates, the creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.    <u>Petition Dates</u>.  On October 25 and 26, 2023 (the "<u>Petition Dates</u>"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana (collectively, the "<u>Chapter 11 Cases</u>").

B.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over these proceedings and over the persons and property affected hereby.  Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.    <u>Cash Collateral Debtors' Stipulations</u>.  Subject to paragraph 15 of this Second Interim Order, the Cash Collateral Debtors admit, stipulate, and agree that (collectively, the "<u>Stipulations</u>"):

    1.    On December 16, 2021, debtors Whitney Oil & Gas, LLC and Trimont Energy (GIB), LLC, along with non-debtor DP Louisiana, LLC (collectively, the "<u>Borrowers</u>"), as borrowers, and debtor Trimont Energy Limited, Inc. and non-debtor DP Gulf Coast, LLC (together, the "<u>Guarantors</u>," and together with the Borrowers, the "<u>Loan Parties</u>"), as guarantors, entered into that certain Multiple Draw Term Loan Agreement (the "<u>Loan Agreement</u>"), as amended from time to time thereafter (together with all agreements, documents, and instruments executed in connection therewith or in furtherance thereof, the "<u>Loan Documents</u>"),[4] with Shell Trading (US) Company, as administrative agent (the "<u>Administrative Agent</u>"), and certain lenders party thereto (the "<u>Secured Lenders</u>," and together with the Administrative Agent, "<u>STUSCO</u>").  The Loan Documents evidence and govern the Obligations of the Loan Parties for principal, accrued and unpaid interest, fees, costs, expenses and all other amounts arising under the Loan Documents. All payments on account of Obligations received by STUSCO prior to the filing of these Chapter 11 Cases were duly authorized by the Cash Collateral Debtors and

---

[3]    The Court makes these findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.  To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

[4]    Capitalized terms used in this Section C of this Interim Order but not otherwise defined herein shall have the meanings ascribed to them in the applicable Loan Documents.

were properly applied by STUSCO to the Loans and any outstanding Obligations thereunder.

2.      Pursuant to the Loan Documents, as of the Petition Dates, the Borrowers were indebted to STUSCO in the amount of not less than $2,286,095 in principal, plus all accrued and unpaid interest, fees, expenses and other amounts owing under the terms of the Loan Documents and applicable law (collectively, the "Prepetition Indebtedness").

3.      Pursuant to the Loan Documents and applicable law, the Borrowers' Prepetition Indebtedness is secured by liens on and security interests in (the "Prepetition Liens") all of the Loan Parties' right, title, and interest in and to (a) substantially all of the real and personal property assets of the Loan Parties and (b) the equity interests of the Borrowers held by the Guarantors (collectively, the "Prepetition Collateral").

4.      Each of the Loan Documents is valid, binding, and, subject to applicable bankruptcy laws, enforceable against the Cash Collateral Debtors in accordance with its terms.  The Cash Collateral Debtors are indebted and liable to STUSCO for the Prepetition Indebtedness without defense, counterclaim, or offset of any kind.

5.      The Prepetition Liens are valid, binding, enforceable, non-avoidable, properly perfected, first-priority liens on and security interests in the Prepetition Collateral, and are not subject to avoidance, re-characterization, disallowance, disgorgement, recovery or subordination under the Bankruptcy Code or applicable non-bankruptcy law.

6.      The Cash Collateral Debtors and their estates do not have any claims, objections, challenges, and/or causes of action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against STUSCO or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon or related to the Loans.  The Cash Collateral Debtors will not challenge or seek to avoid the validity, enforceability, priority, or perfection of the Prepetition Indebtedness or the Prepetition Liens.

7.      The filing of the Chapter 11 as well as the failure of the Borrowers to deliver financials are events of default under the Loan Documents.

8.      In making the Cash Collateral Debtors' decision to permit the use of Cash Collateral or in taking any other actions related to this Second Interim Order, STUSCO (i) shall have no liability to any third party and shall not be deemed to be in control of the operations of the Cash Collateral Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Cash Collateral Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to the Cash Collateral Debtors, their estates, or their creditors. The Cash Collateral Debtors further acknowledge, stipulate, and agree that STUSCO's relationship with the Cash Collateral Debtors shall not constitute or be deemed to constitute a joint venture or partnership with the Cash Collateral Debtors.

9. Certain entities, including but not limited to those listed on **Exhibit B** attached hereto (collectively, the "LOWLA Lienholders") may possess oil and gas liens under the Louisiana Oil Well Lien Act ("LOWLA") against certain of the oil and gas assets owned by the Cash Collateral Debtors.

D. Adequate Protection. STUSCO and the LOWLA Lienholders are entitled to receive adequate protection only in respect of any diminution in the value of their interest in the Prepetition Collateral resulting from the (a) use of the Cash Collateral, (b) use, sale, depreciation or other diminution in value of the Prepetition Collateral, or (c) imposition of the automatic stay under section 362(a) of the Bankruptcy Code (the amount of any such diminution being referred to hereinafter as the "Adequate Protection Obligations"). Pursuant to sections 361, 363, and 507(b), as adequate protection for the Adequate Protection Obligations, the Cash Collateral Debtors have agreed to provide STUSCO and the LOWLA Lienholders with: (i) the Adequate Protection Liens (defined below); (ii) the Adequate Protection Superpriority Claim (defined below); and (iii) the Additional Adequate Protection (defined below). STUSCO objects to the use by the Cash Collateral Debtors of the Cash Collateral, except on the terms and conditions set forth in this Second Interim Order.

E. Necessity of Relief Requested. The Cash Collateral Debtors require the use of Cash Collateral in order to finance their operations, absent which immediate and irreparable harm will result to the Cash Collateral Debtors, their estates and creditors, and the prospects for a successful conclusion of the Chapter 11 Cases. Absent the use of Cash Collateral, it would be impossible for the Cash Collateral Debtors to continue to operate their businesses, even for a limited period of time, and serious and irreparable harm to the Cash Collateral Debtors, their estates, and their creditors would occur. The Cash Collateral Debtors do not have sufficient available sources of working capital and financing to continue to operate their business without the use of Cash Collateral. The relief requested in the Motion is, therefore, necessary to the preservation and

maintenance of the value of the Cash Collateral Debtors' assets. STUSCO and the Cash Collateral Debtors have negotiated at arms' length and in good faith regarding the Cash Collateral Debtors' use of Cash Collateral to fund the continued operations of the Cash Collateral Debtors for the period through the Termination Declaration Date (as defined below), all subject to the terms and conditions set forth in this Fourth Interim Order, including the protection afforded an entity acting in "good faith" under section 363(m) of the Bankruptcy Code. Based on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral are fair and reasonable under the circumstances, reflect the Cash Collateral Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Entry of this Fourth Interim Order is in the best interests of the Cash Collateral Debtors, their estates, and their creditors.

F. <u>Interim Hearings</u>. The Interim Hearings were held pursuant to Bankruptcy Rule 4001(b)(2). Notice of the emergency relief requested in the Motion and the Interim Hearings was provided by the Debtors to the United States Trustee, Region 5 and the entire mailing matrix, and no other or further notice is or shall be required.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1. <u>Motion</u>. The Motion is **GRANTED**, and the Cash Collateral Debtors' use of Cash Collateral on a fourth interim basis is authorized, subject to the terms and conditions set forth in this Fourth Interim Order. All objections to the Motion to the extent not withdrawn or resolved, and all reservations of rights included therein, are hereby denied and overruled.

2. <u>Authorization to Use Cash Collateral</u>. Subject to the terms of this Fourth Interim Order, pursuant to section 363(c)(2) of the Bankruptcy Code, the Cash Collateral Debtors are

authorized to use Cash Collateral for the period (the "Subject Period") from the Petition Dates

through the date which is five (5) business days following a Termination Declaration Date, strictly

pursuant to and in accordance with the Budget attached to this Fourth Interim Order as **Exhibit A**

(the "Budget"). Upon the date of the expiration of the Subject Period, the Cash Collateral Debtors'

authority to use Cash Collateral shall cease absent further Order of this Court.

3.      Budget Maintenance.  Except as otherwise expressly set forth herein, the Budget

attached hereto as **Exhibit A** may be amended or modified in writing only after notice and hearing

before this Court, and any modifications to, or extensions, amendments or updates of, the Budget

shall be in form and substance acceptable to and approved in writing by STUSCO in its sole

discretion (with such consent not to be unreasonably withheld), absent further Order of this Court.

The Cash Collateral Debtors are authorized to use Cash Collateral subject to and in accordance

with the Budget; provided, however, that the Cash Collateral Debtors shall submit a revised Budget

on November 24, 2023, and at the end of each four-week period thereafter.  Beginning on

November 24, 2023, the Cash Collateral Debtors shall deliver to STUSCO on or before the close

of business on Thursday of each week (and if such day is not a business day, then the next

succeeding business day) the following: (a) comparison for the prior week of actual results of all

items contained in the Budget to the amounts originally contained in the Budget and (b) cumulative

comparison for the period from the Petition Dates through the end of the prior week of the actual

results of all items contained in the Budget to the amounts originally contained in the Budget, in

each case along with such supporting information and additional reporting as the STUSCO may

request.  Upon request, the Cash Collateral Debtors shall also deliver items (a) and (b) in the

preceding sentence to the Subchapter V Trustee and counsel to any official committee appointed

in these Chapter 11 Cases (the "Committee"), if any.  The Cash Collateral Debtors and their

professionals, consultants, and other advisors shall be available weekly (subject to reasonable scheduling conflicts) for a telephonic conference call with STUSCO and/or its professionals to discuss the status of the Chapter 11 Cases, the results of operations and other matters pertaining to the Cash Collateral Debtors, including any sale or restructuring efforts. STUSCO shall have independent access to the Cash Collateral Debtors' financial advisors to discuss matters relating to the Cash Collateral Debtors, including any contemplated sale or restructuring of the Cash Collateral Debtors.

4. <u>Adequate Protection Liens</u>. Subject to the Carve-Out (as defined below), as adequate protection against any diminution in value of STUSCO and the LOWLA Lienholders' interests in the Prepetition Collateral that occurs during the Subject Period, STUSCO and the LOWLA Lienholders are hereby granted (effective and perfected as of the Petition Dates and without the necessity of the execution by the Cash Collateral Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a valid and perfected security interest in, and lien on (the "<u>Adequate Protection Liens</u>"), all of the right, title and interest of the Cash Collateral Debtors in, to, and under all present and after-acquired property and assets of the Cash Collateral Debtors of any nature whatsoever, whether real or personal, tangible or intangible, wherever located, including, without limitation, all cash and Cash Collateral of the Debtor and any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes of action, general intangibles, accounts receivable, and other rights to payment, whether arising before or after the Petition Dates, chattel paper, documents, instruments, interests in leaseholds, real properties, plants, machinery, equipment, patents, copyrights, trademarks, trade names or other intellectual property, licenses, insurance proceeds, and commercial tort claims, and all proceeds, products, offspring, rents and profits thereof, rights under letters of credit, capital

stock and other equity or ownership interests held by the Cash Collateral Debtors, including equity interests in subsidiaries and all other investment property, and the proceeds of all of the foregoing, whether now existing or hereafter acquired (collectively, the "Adequate Protection Collateral"); provided, however, that the Adequate Protection Liens shall not attach to causes of action or the proceeds of causes of action under Chapter 5 of the Bankruptcy Code ("Avoidance Actions"), and Avoidance Actions shall not constitute Adequate Protection Collateral. Subject to the Carve-Out (as defined below), the Adequate Protection Liens shall be (i) first priority perfected liens on all of the Adequate Protection Collateral that is not otherwise encumbered by validly perfected, non-avoidable security interests or liens as of the Petition Dates other than the Avoidance Actions (collectively, the "Unencumbered Assets"), (ii) perfected replacement liens on all of the Adequate Protection Collateral as to which STUSCO and the LOWLA Lienholders had a first priority lien as of the Petition Dates, subject to any Carve-Out, and (iii) junior perfected liens on all Adequate Protection Collateral that is subject to a validly perfected lien with priority over STUSCO's and the LOWLA Lienholders' liens as of the Petition Dates, if any. The priority between STUSCO and the LOWLA Lienholders in the Adequate Protection Liens and Adequate Protection Superpriority Claim (defined below) shall be in the same rank and priority as such parties possessed in the prepetition assets of the Cash Collateral Debtors.

5.    Priority of Adequate Protection Liens. The Adequate Protection Liens shall be enforceable against the Cash Collateral Debtors, their estates, and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Except as provided herein, the Adequate Protection Liens shall not be made

junior to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, or upon the dismissal of the Chapter 11 Cases or Successor Cases; provided, however, and for the avoidance of doubt, the Adequate Protection Liens shall not prime any validly perfected lien on any Adequate Protection Collateral having priority over STUSCO and the LOWLA Lienholders' liens as of the Petition Dates.

6.      Adequate Protection Superpriority Claim.  Only to the extent that the Adequate Protection Liens do not adequately protect against the diminution in the value of STUSCO and the LOWLA Lienholders' interests in the Prepetition Collateral, as further adequate protection against any diminution in value of the interests of STUSCO and the LOWLA Lienholders in the Prepetition Collateral, STUSCO and the LOWLA Lienholders are hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code allowed Superpriority administrative expense claims in the Chapter 11 Cases in the amount of the Adequate Protection Obligations (the "Adequate Protection Superpriority Claim"), subject to any Carve-Out, which shall be payable from and have recourse to all Adequate Protection Collateral and all proceeds of Adequate Protection Collateral; provided, however, that for the avoidance of doubt, (i) the Adequate Protection Superpriority Claim shall not have recourse to any Avoidance Actions or the proceeds thereof; and (ii) the Adequate Protection Superpriority Claim shall not be payable from or have recourse to Unencumbered Assets and the proceeds thereof unless and to the extent that the Adequate Protection Collateral and all proceeds thereof (excluding Unencumbered Assets and proceeds thereof) is insufficient to satisfy the Adequate Protection Obligations in full; and (iii) the Administrative Agent shall satisfy or repay, and shall be deemed to have satisfied and repaid, the

Adequate Protection Obligations first from all other Adequate Protection Collateral and proceeds thereof prior to applying any of the proceeds of the Unencumbered Assets to the Adequate Protection Obligations.

7.      Priority of Adequate Protection Superiority Claim.   The Adequate Protection Superpriority Claim shall be junior only to the Carve-Out (as defined herein).   Except for the Carve-Out, the Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against the Cash Collateral Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code.

8.      Modification of Automatic Stay.   The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Fourth Interim Order, including, without limitation, to: (a) permit the Cash Collateral Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claim; (b) permit the Cash Collateral Debtors to perform such acts as STUSCO and/or the LOWLA Lienholders may request in their sole discretion to assure the perfection and priority of the liens granted herein; and (c) authorize the Cash Collateral Debtors to pay, and STUSCO and/or the LOWLA Lienholders to retain and apply, payments made in accordance with the terms of this Fourth Interim Order, provided, however, any stay relief with respect to the exercise of remedies shall be in accordance with Paragraph 13 or as otherwise ordered by the Court.

9.      Perfection of Adequate Protection Liens.   This Fourth Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate

Protection Liens, without the necessity of filing or recording any mortgage, financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle STUSCO and the LOWLA Lienholders to the priorities granted herein. Notwithstanding the foregoing, the Cash Collateral Debtors are authorized and directed to execute and deliver promptly to STUSCO and/or the LOWLA Lienholders all such financing statements, mortgages, notices and other documents as STUSCO and/or the LOWLA Lienholders may reasonably request, and STUSCO and/or the LOWLA Lienholders may file a certified copy of this Fourth Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments.

10.     Disposition of Collateral.    To the extent that STUSCO and/or the LOWLA Lienholders have a lien on any Adequate Protection Collateral or Prepetition Collateral, or consent rights with respect to disposition of any of the Cash Collateral Debtors' assets under the Loan Documents, the Cash Collateral Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any such Adequate Protection Collateral or Prepetition Collateral outside the ordinary course of business without Court Order.

11.     Additional Adequate Protection.    As additional adequate protection (the "Additional Adequate Protection"):

a.     Interest and Principal Payments. STUSCO shall receive from the Cash Collateral Debtors on the last business day of each month thereafter, cash payment of principal equal in an amount calculated based upon the outstanding principal balance due as of the Petition Dates amortized over the remaining term under the Loan Documents (approximately $285,761.91 per month) plus all accrued and unpaid interest, at the applicable default rates (9%) provided in the Loan Agreement.  These monthly interest and

principal payments are being made by the Cash Collateral Debtors in exchange for STUSCO's agreement, absent a Termination Event under this Second Interim Order, (i) to not terminate that certain Master Crude Petroleum Purchase and Sale Agreement, dated as of December 16, 2021, and that certain Master Crude Petroleum Purchase and Sale Agreement Confirmation, dated as of December 16, 2021, (collectively, and as amended from time to time, the "Crude Agreement") by and between Whitney and STUSCO, and (ii) to not exercise its right to net the amount STUSCO owes to Whitney against the debt owed by Whitney to STUSCO; provided, however, that such agreement is based solely on the existing event of default under the Crude Agreement occurring based on Whitney's bankruptcy filing and shall not affect STUSCO's remedies upon occurrence of a Termination Event as set forth in paragraph 13 of this Second Interim Order.

b.    Fees and Expenses: In accordance with this paragraph 11(b), and to the extent allowed under applicable law and/or the Loan Documents, the Cash Collateral Debtors are authorized and directed to pay, all reasonable and documented professional and advisory fees, costs and expenses of their legal, financial and other professionals, including Norton Rose Fulbright US LLP, as lead counsel to STUSCO, Jones Walker LLP, as local counsel to STUSCO, and any other local or regulatory counsel as may at any time be necessary (collectively, the "STUSCO Professionals"), within ten (10) business days after the presentment of any such invoices (which may be in summary form only) to the Debtors, the U.S. Trustee, the Subchapter V Trustee, and the Committee, if any. The STUSCO Professionals shall not be required to comply with the *Appendix A to Part 58— Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330* (the "U.S. Trustee Fee Guidelines") and shall not be subject to application or allowance by the Court, unless STUSCO has received a written objection from the Debtors, the U.S. Trustee, the Subchapter V Trustee, or the Committee, within the ten (10) business day notice period as set forth above.

c.    Reporting: The Cash Collateral Debtors shall comply with the reporting requirements set forth in the Loan Documents and provide copies of all reports to the STUSCO Professionals. In addition to the reporting requirements set forth in the Loan Agreement, the Cash Collateral Debtors shall provide to STUSCO, on or before the close of business on Thursday of each week (and if such day is not a business day, then the next succeeding business day), a report regarding cash flow projections for the three calendar months following such week, all certified by a financial officer as presenting fairly in all material respects the financial condition and results of operations of the Cash Collateral Debtors on a consolidated basis in accordance with GAAP consistently applied, subject to normal year-end audit adjustments and the absence of footnotes.

d.    Access: In addition to, and without limiting, whatever rights to access STUSCO has under the Loan Documents, upon reasonable prior written notice and otherwise not to be unreasonably withheld, the Cash Collateral Debtors shall permit representatives, agents and/or employees of STUSCO, including the STUSCO Professionals, to have reasonable access to its premises and records during normal business hours and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

12.     <u>Events of Default</u>. The occurrence of any of the following events, unless waived in writing by STUSCO and/or the LOWLA Lienholders, as applicable, shall constitute an event of default (each a "<u>Termination Event</u>," and collectively, the "<u>Termination Events</u>"):

a.      the failure by the Cash Collateral Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Fourth Interim Order;

b.      the filing by the Cash Collateral Debtors of any debtor-in-possession financing pleadings or any documents pertaining to a debtor-in-possession financing that adversely effects STUSCO's Prepetition Liens, STUSCO's Adequate Protection Liens, or the rights granted under any agreements between the Debtors and STUSCO;

c.      the Cash Collateral Debtors' obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest or other lien on all or any portion of the Adequate Protection Collateral or Prepetition Collateral which is equal or senior to any security interest or other lien of STUSCO and/or the LOWLA Lienholders, or (ii) entitled to priority administrative status which is equal or senior to that granted to STUSCO and/or the LOWLA Lienholders;

d.      any lien or security interest purported to be created under the Loan Documents shall cease to be, or shall be asserted by the Cash Collateral Debtors not to be, a valid and perfected lien on or security interest in any Adequate Protection Collateral, with the priority required by the Loan Documents or herein;

e.      the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Adequate Protection Collateral having a value in excess of $25,000.00, or (ii) with respect to any lien on or the granting of any lien on any Adequate Protection Collateral or Prepetition Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;

f.      dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to chapter 7 cases, or appointment in the Chapter 11 Cases of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

g.      any misrepresentation of a material fact made after the Petition Dates by the Cash Collateral Debtors or its agents to STUSCO about the financial condition of the Cash Collateral Debtors, the nature, extent, location or quality of any Adequate Protection Collateral or Prepetition Collateral, or the disposition or use of any Adequate Protection Collateral or Prepetition Collateral, including Cash Collateral;

h. a default by any of the Cash Collateral Debtors in reporting financial information as and when required under this Fourth Interim Order;

i. a default by Whitney with respect to any of the Events of Default as defined in the Crude Agreement by and between Whitney and STUSCO;

j. the failure of the Cash Collateral Debtors to timely meet any of the following case milestones; provided, however, that the following case milestones shall be subject to modification by the Court for Court administrative reasons:

(i) entry of a final, nonappealable order approving the bid procedures of the Sale, in form and substance acceptable to STUSCO in its reasonable discretion, on or prior to December 15, 2023; and

(ii) entry of a final, nonappealable order approving the Sale, in form and substance acceptable to STUSCO in its reasonable discretion, on or prior to June 14, 2024, to the extent STUSCO is not paid in full;

k. the filing by the Cash Collateral Debtors of a disclosure statement or plan that adversely effects STUSCO's Prepetition Liens, STUSCO's Adequate Protection Liens, or the rights granted under any agreements between the Debtors and STUSCO;

l. the deviation of actual performance under the Budget by 10% or more calculated on an aggregate basis and measured (i) with respect to the Budget attached hereto as **Exhibit A**, for the two-week period beginning on January 15, 2024, and (ii) thereafter, on a rolling two-week basis;

m. the filing by the Cash Collateral Debtors of any motion seeking, or the granting of any motion providing for, reversal, vacatur, or modification (other than a modification with the express prior written consent of STUSCO and/or the LOWLA Lienholders, as applicable) of this Second Interim Order.

13. Rights and Remedies Upon Termination Event. Immediately upon the occurrence and during the continuation of a Termination Event, STUSCO and/or the LOWLA Lienholders, as applicable, may declare a termination, reduction, or restriction of the ability of the Cash Collateral Debtors to use any Cash Collateral (any such declaration, shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by email (or other electronic means) to counsel to the Cash Collateral Debtors, the Subchapter V Trustee, counsel to the Committee, if any, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). Upon the passage of five

16

(5) business days from the Termination Declaration Date, unless the Cash Collateral Debtors shall have cured such Termination Event in full prior to the expiration of such five-day period, including with respect to any Termination Event under paragraph 12(g) by correcting any such misrepresentation, (a) the Cash Collateral Debtors' right to use Cash Collateral shall automatically cease, and the Cash Collateral Debtors shall no longer have the right to use or seek to use Cash Collateral; and (b) the automatic stay shall automatically be terminated without further notice or order, and STUSCO and/or the LOWLA Lienholders, as applicable, shall be permitted to exercise all remedies set forth herein and in the Loan Documents, as applicable, and as otherwise available at law against the Adequate Protection Collateral and the Prepetition Collateral, without further notice, order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Adequate Protection Collateral and the Prepetition Collateral or any other rights and remedies granted to STUSCO and the LOWLA Lienholders with respect thereto pursuant to the Loan Documents or this Fourth Interim Order, as applicable; provided, however, that notwithstanding anything to the contrary herein, (i) during such five-day period, any party-in-interest shall have the right to file an expedited motion to determine whether a Termination Event has occurred (a "Determination Motion"); and (ii) if a request for hearing, subject to the Court's availability, on the Determination Motion is made prior to the end of such five-day period from the Termination Declaration Date, the Cash Collateral Debtors' shall maintain their right to use Cash Collateral pursuant to the terms of this Fourth Interim Order until the Court hears and rules on the Determination Motion. Notwithstanding the delivery of a Termination Declaration, each Cash Collateral Debtor is authorized to use Cash Collateral to pay any item set forth in the Budget attached to this Second Interim Order as **Exhibit A** that was due

to be paid prior to the Termination Declaration Date, and neither STUSCO nor the LOWLA Lienholders shall have the right to seek disgorgement of any payment made or to be made under the Budget in a period prior to the Termination Declaration Date.

14.     Carve-Out.  Subject to the terms and conditions contained in this paragraph, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall be subordinate to the following (collectively, the "Carve-Out"): (i) fees pursuant to 28 U.S.C. § 1930(a)(6), if any; (ii) fees payable to the clerk of the Bankruptcy Court and any agent thereof; (iii) fees payable to the Subchapter V Trustee; (iv) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all allowed, unpaid fees and expenses (not to exceed the amounts set forth in the Budget up to, but not beyond, the Termination Declaration Date) incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Committee, if any, pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by STUSCO and/or the LOWLA Lienholders, as applicable, of a Termination Declaration, whether allowed by the Court prior to or after delivery of a Termination Declaration; and (v) allowed fees and expenses of Professional Persons in an aggregate amount not to exceed $250,000 incurred after the first business day following delivery by STUSCO and/or the LOWLA Lienholders, as applicable, of the Termination Declaration unless the Court rules in favor of any party-in-interest that timely files a Determination Motion as provided in paragraph 13 of this Fourth Interim Order, to the extent allowed at any time, whether by interim order, procedural order, or otherwise.  Payment of any obligations within the Carve-Out shall not and shall not be deemed to reduce the Loans or the Adequate Protection Obligations and shall not and shall not be deemed

18

to subordinate the Adequate Protection Liens or the Adequate Protection Superpriority Claim to any junior prepetition or postpetition lien, interest, or claim (other than the Carve-Out) in favor of any other party. Nothing in this paragraph shall alter the requirements for Court approval and allowance of fees and expenses incurred by Professional Persons or the rights of the Cash Collateral Debtors, STUSCO, the LOWLA Lienholders, or any other party-in-interest to object to the award of such requested fees and expenses.

15. <u>Lien Review Period</u>. Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection, and enforceability of the Prepetition Liens, and all acknowledgments, admissions, and confirmations of the Cash Collateral Debtors in paragraph C of this Fourth Interim Order, are subject to the rights of any party in interest (including any trustee appointed or elected or the Committee), other than the Cash Collateral Debtors or any of its affiliates, to file a complaint, or a motion seeking derivative standing to file any such complaint (a "<u>Standing Motion</u>"), pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate, or otherwise challenge (collectively, the "<u>Challenges</u>") the Loans or the Prepetition Liens; <u>provided, however</u>, that any such complaint or Standing Motion must be filed in this Court by any party-in-interest (other than the Cash Collateral Debtors or any of its affiliates), including the Committee, within 75 calendar days from the entry of the First Interim Order, or, solely with respect to the Committee, within 60 calendar days from the date of the Committee's formation, or any subsequent date that may be agreed to in writing by STUSCO and/or the LOWLA Lienholders, as appliable, with respect to the time to file any such complaint and/or Standing Motion relating to the Loans and/or the Prepetition Liens (the "<u>Investigation Period</u>"). If no such complaint and/or Standing Motion is filed within the Investigation Period, then (a) all Challenges shall be, without further notice to or order of the Court, deemed to have been forever relinquished, released, and

waived as to the Committee and other person or entity and (b) the Stipulations set forth in paragraph C of this Fourth Interim Order shall be fully binding on the Cash Collateral Debtors, their estates, and all creditors and parties in interest. If such a complaint and/or a Standing Motion is timely filed within the Investigation Period, all claims and defenses against STUSCO and/or the LOWLA Lienholders, as applicable shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived as to the Committee and other person or entity, except with respect to claims and defenses that are expressly asserted in such complaint and/or Standing Motion.

16.     Limitations on the Cash Collateral and the Carve-Out.

a.     From and after the date of entry of this Fourth Interim Order, except as provided herein, the proceeds of the Adequate Protection Collateral and Cash Collateral shall not, directly or indirectly, be used to pay any expenses, payments, and/or disbursements of the Cash Collateral Debtors or incurred by the Cash Collateral Debtors except for those items which are then due, expressly permitted under the Budget or this Fourth Interim Order, and in such amounts as clearly identified in the Budget and/or this Fourth Interim Order (including compensation and reimbursement of expenses allowed by this Court to Court-approved professional persons to the extent that such fees and expenses are in accordance with the line items for such professionals in the Budget). Subject to the Carve Out, in no event shall any costs or expenses of administration be imposed upon STUSCO, the LOWLA Lienholders, or any of the Adequate Protection Collateral pursuant to sections 105(a), 506(c) and/or 552 of the Bankruptcy Code, without the prior written consent of STUSCO and/or the LOWLA Lienholders, as applicable,, and no such consent shall be implied from any action, inaction, or acquiescence by STUSCO and/or the LOWLA Lienholders, as applicable; and

20

b.  Notwithstanding anything herein, Cash Collateral may only be used in accordance with the Budget and, in any event, the Cash Collateral and the Carve-Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type (i) against the Administrative Agent or any other Secured Party or seeking relief that would impair their rights and remedies under the Loan Documents or this Fourth Interim Order, including, without limitation, (A) to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any actions for lender liability against STUSCO and/or the LOWLA Lienholders, any actions under section 105 of the Bankruptcy Code against STUSCO and/or the LOWLA Lienholders, any actions under chapter 5 of the Bankruptcy Code against STUSCO and/or the LOWLA Lienholders, or any actions under applicable, non-bankruptcy law or otherwise against STUSCO and/or the LOWLA Lienholders, (B) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the rights and obligations of STUSCO and/or the LOWLA Lienholders or seeking affirmative relief against STUSCO and/or the LOWLA Lienholders, or (C) for the payment of any services rendered by any Professional Person in connection with the assertion of or joinder in any claim, counterclaim, action, proceedings, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief that would impair the ability of STUSCO to recover on the Loans, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Loans, (iii) for monetary, injunctive or other affirmative relief against STUSCO and/or the LOWLA Lienholders or their Adequate Protection Collateral or Prepetition Collateral, or (iv) preventing, hindering or otherwise delaying the exercise by STUSCO and/or the LOWLA Lienholders of any rights and/or

21

remedies under this Fourth Interim Order, the Loan Documents, or applicable law, or the enforcement of realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by STUSCO and/or the LOWLA Lienholders upon any of the Adequate Protection Collateral and the Prepetition Collateral; (b) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without prior written consent of STUSCO and/or the LOWLA Lienholders, unless otherwise ordered by the Court; (c) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Cash Collateral Debtors without the prior written consent of STUSCO and/or the LOWLA Lienholders, (d) to object, contest, or interfere with in any way the enforcement or realization upon any of the Adequate Protection Collateral or the Prepetition Collateral by STUSCO and/or the LOWLA Lienholders once a Termination Event has occurred, unless the Cash Collateral Debtors cure such default or the Court rules against STUSCO and/or the LOWLA Lienholders on a timely filed Determination Motion pursuant to paragraph 13 of this Fourth Interim Order; (e) to sell or otherwise dispose of the Adequate Protection Collateral or the Prepetition Collateral without the prior consent of STUSCO and/or the LOWLA Lienholders, as applicable; (f) to pay indebtedness outside the ordinary course of business without the prior written consent of STUSCO and/or the LOWLA Lienholders, as applicable; (g) to incur any new indebtedness on a senior or *pari passu* basis with the Prepetition Liens without the prior written consent of STUSCO and/or the LOWLA Lienholders, as applicable; (h) to object to or challenge in any way the claims, liens, or interests (including interests in the Adequate Protection Collateral and the Prepetition Collateral) held by or on behalf of STUSCO and/or the LOWLA Lienholders, as applicable; (i) to pay any costs or expenses that are not ordinary course operating expenses of the Cash Collateral Debtors, unless otherwise ordered by the Court; or (j) to modify or seek to

22

modify the rights of STUSCO and/or the LOWLA Lienholders under this Fourth Interim Order; provided, however, that the Cash Collateral in an amount not to exceed $20,000 in the aggregate may be used by the Committee, if any, for allowed fees and expenses incurred solely by the Committee to conduct the investigations set forth in paragraph 15 of this Fourth Interim Order to investigate the validity, amount, extent, perfection, priority, enforceability, or avoidability of the Prepetition Liens, the Loans, and the Prepetition Collateral of STUSCO and the LOWLA Lienholders. Any upward adjustments to the cap must be requested for by the Committee and approved by STUSCO; if STUSCO does not approve the adjustment, the Committee shall have the right to file an expedited motion to determine whether the cap should be increased.

17. No Third-Party Rights. Except as explicitly provided for herein, this Fourth Interim Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

18. Section 506(c) Claims. Subject to and upon entry of this Fourth Interim Order, no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases or any Successor Cases at any time shall be charged against any of STUSCO and/or the LOWLA Lienholders, any of their claims, any obligations under the Loan Agreement, any Adequate Protection Liens, and Adequate Protection Superpriority Claims, any Prepetition Liens, or any Adequate Protection Collateral or Prepetition Collateral, including any Cash Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of STUSCO and/or the LOWLA Lienholders, as applicable; provided, however, that nothing herein shall prejudice the rights of (i) the Committee, if the Committee is granted derivative standing by final, non-appealable order, (ii) a chapter 7 trustee (or any successor trustees), if appointed, or (iii) after the effective date of a confirmed plan of liquidation, the plan

23

administrator, liquidating trustee, or any other successor to the estate with authority to prosecute the estate claims, causes of action, and challenges asserted in any Standing Motion filed by the Committee to seek to charge such costs or expenses of administration as and solely to the extent asserted in such Standing Motion, and all parties' rights and defenses with respect thereto are reserved and preserved.

19.     <u>No Marshaling/Application of Proceeds</u>.  Subject to and upon entry of this Fourth Interim Order, neither STUSCO nor the LOWLA Lienholders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, including any Cash Collateral, as the case may be, and proceeds shall be received and applied in accordance with this Fourth Interim Order and the Loan Agreement, notwithstanding any other agreement or provision to the contrary.

20.     <u>Section 552(b)</u>.  Subject to and upon entry of this Fourth Interim Order, STUSCO and the LOWLA Lienholders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of STUSCO and the LOWLA Lienholders with respect to proceeds, product, offspring or profits of any of the Adequate Protection Collateral or the Prepetition Collateral, including any Cash Collateral.

21.     <u>Rights Preserved</u>.

a.     Notwithstanding anything herein to the contrary, the entry of this Fourth Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) STUSCO's and the LOWLA Lienholders' rights to seek any other or supplemental relief in respect of the Cash Collateral Debtors, including the right to seek additional adequate protection; (b) any of the rights of STUSCO and the

LOWLA Lienholders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Cases or Successor Cases, conversion of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

b. Nothing in this Order shall constitute a finding: (a) with respect to the estates' ownership interests in the Wells (as defined in Freestone's Limited Objection) [ECF No. 69, Case No. 23-111873] or (b) that the hydrocarbon production associated with Freestone's interests in the Wells constitutes property of the Debtors' estates or "cash collateral."

c. The funds paid to Freestone pursuant to 22(a) below and segregated pursuant to 22(b) below shall not serve as adequate protection for creditors prior to any determination of ownership. If the interest in the Well bores that generate the funds are determined to be the property of Freestone, the funds in the accounts shall not serve as adequate protection for creditors or be subject to any replacement liens granted herein. To the extent that the Debtors own an interest in any of the Well Bores, the funds generated from the Well Bores shall become "property of the estate," to the extent of Debtors' interest but not otherwise and constitute cash collateral and subject to the replacement liens granted herein. The Debtors stipulate that at least 50% of the Well Bores and the funds attributable to the sale of hydrocarbons are the property of Freestone. Any party in interest may contest this

stipulation by filing an action on or before January 15th, 2024.  If no such objection

is filed, the funds paid to Freestone pursuant to 22(a) below shall not be considered

"cash collateral" and will not be subject to a claim that the funds paid to Freestone

are subject to any replacement liens granted herein

22. <u>Freestone Proceeds.</u>

    a.  Subject to the foregoing and preservation of all rights of Freestone, the Debtors are

authorized and directed to remit to Freestone the undisputed proceeds of

Freestone's production in accordance with the respective Cash Collateral Budgets

for East Bay and Garden Island Bay.  For the purposes of this Order, the undisputed

proceeds shall mean: (i) fifty percent (50%) of the production proceeds, net of

Royalty payments, severance tax, LOE, and other burdens of production ("Costs of

Production"), from the East Bay Alpha, Beta, Gamma, and Epsilon Wells (as

defined in Freestone's Limited Objection [Docket 69]) and (ii) zero percent (0%)

of the production proceeds, net of the costs of production, from the Garden Island

Bay Delta Well (as defined in Freestone's Limited Objection [Docket 69]).

    b.  With respect to the disputed Freestone proceeds, Whitney shall segregate and

preserve the disputed proceeds, net of the Costs of Production, from the Alpha,

Beta, Gamma, Delta, and Epsilon Wells (collectively, the "Wells") until resolution

of title disputes between Debtors and Freestone relative to the disputed interests

and further order of the Court.

    c.  Freestone and Debtors reserve all rights with respect to Freestone's claims

including all rights to audit or otherwise request an appropriate adjustment to the

Costs of Production and Debtors' and Freestone reserve all rights with respect to interests in the Wells and the production attributable therefrom.

23.     <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to STUSCO and the LOWLA Lienholders hereunder is shown to be insufficient to compensate for any diminution in value of STUSCO and the LOWLA Lienholders' interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgement by STUSCO and the LOWLA Lienholders, that the adequate protection granted herein does in fact adequately protect STUSCO and the LOWLA Lienholders against any diminution in value of its interest in the Prepetition Collateral (including Cash Collateral).

24.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of STUSCO and the LOWLA Lienholders to seek relief or otherwise exercise its rights and remedies under this Fourth Interim Order or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise of STUSCO and the LOWLA Lienholders.

25.     <u>Binding Effect</u>.  The provisions of this Fourth Interim Order shall be binding upon and inure to the benefit of the Cash Collateral Debtors, STUSCO, the LOWLA Lienholders, the U.S. Trustee, all other creditors of any of the Cash Collateral Debtors, the Subchapter V Trustee, the Committee (if any), and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases, any Successor Cases, or upon dismissal of the Chapter 11 Cases or Successor Cases.  In the event of any inconsistency between the provisions of this Fourth Interim Order and any other order (including any "First Day" Pleadings and Orders relating thereto), the provisions of this Fourth Interim Order

shall govern and control. Any payments to be made under any order (including any "First Day" order) shall only be made in accordance with this Fourth Interim Order and the Budget.

26. <u>Effectiveness</u>. This Fourth Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Dates immediately upon entry hereof. Notwithstanding Bankruptcy Rules 7062, 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Third Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Fourth Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

27. <u>Proofs of Claim</u>. STUSCO shall not be required to file a proof of claim in these Chapter 11 Cases. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, STUSCO's claims) in the Chapter 11 Cases or Successor Cases shall not apply to STUSCO with respect to the Prepetition Indebtedness.

28. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Fourth Interim Order according to its terms.

**IT IS FURTHER ORDERED** that the Court shall hold a further interim hearing to consider the Motion on **Thursday, February 22, 2024, at 9:30 a.m.** before the undersigned at the United States Bankruptcy Court, Eastern District of Louisiana, 500 Poydras Street, Courtroom B-709, New Orleans, Louisiana, 70130. Parties in interest may participate in the hearing (i) in person; (ii) by telephone only (Dial-in 504-517-1385, Access Code 129611); or (iii) by telephone using the dial-in number and video using https://gotomeet.me/JudgeGrabill. Parties in interest are advised to review this Court's Amended General Order 2021-2 for information on conduct of hearings, available at https://laeb.uscourts.gov/.

**IT IS HEREBY FURTHER ORDERED** that any opposition to the Motion must be filed and properly served on or before **Thursday, February 15, 2024**.

**IT IS FURTHER ORDERED** that the Debtors shall serve this Order via first-class U.S. Mail on the required parties who will not receive a copy through the Court's CM/ECF system pursuant to the Federal Rules of Bankruptcy Procedure and this Court's Local Rules and file a certificate of service to that effect within three (3) days.

New Orleans, Louisiana, January 18, 2024.

MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**Trimont (GIB)**
**Cash Collateral Forecast**
**As of 1/15/24**

| | 1/1/2024 | 2/1/2024 | 3/1/2024 | 4/1/2024 |
|---|---|---|---|---|
| NYMEX Strip | $72.00 | $71.00 | $71.00 | $71.00 |
| Flat | $65.00 | $65.00 | $65.00 | $65.00 |
| Case (1:Strip; 2:Flat) | 2 | 2 | 2 | 2 |

**As of 1/15/24**
**Debt Balance**
**$    1,714,572**

**Garden Island Bay**

| | | | | | |
|---|---|---|---|---|---|
| Oil Sales | 16.53 | | | Oil Sales | 14.50 |
| Realized Price | $73.69 | | | Flat Price | $65.00 |
| Gross Revenue | $1,218 | | | Gross Revenue | $943 |

**Garden Island Bay**

| Weeks | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Day of Week | Mon | Mon | Mon | Mon | Mon | Mon |
| Date | 1/15/2024 | 1/22/2024 | 1/29/2024 | 2/5/2024 | 2/12/2024 | 2/19/2024 |
| ($M) | | | | | | |
| Beginning Cash | 1,552 | 2,150 | 1,892 | 1,370 | 1,150 | 839 |
| | | | | | | |
| Cash In: | | | | | | |
| Revenue | 1,218 | | | | | 943 |
| Netting Pmt | | | | | | |
| Total Cash In | 1,218 | - | - | - | - | 943 |
| | | | | | | |
| Cash Out: | | | | | | |
| Severance Tax | (152) | | | - | | (118) |
| State Royalties | (207) | | | - | | (160) |
| Monthly Fed ONRR | | | | | | |
| Mineral/ORRI Owners | (61) | | | - | | (47) |
| Ad Valorem Tax | | (89) | | | | |
| STUSCO P&I (at 9%) | | | (150) | | | |
| LH OH Reimbursement | | | 13 | | | |
| LH P&I Reimbursement | | | 8 | | | |
| Douglas Draper | | | | | | |
| Jackson Walker | | | | | | (8) |
| US Trustee Fees (.008%*disp for qtr) | | | - | | | |
| Chaffe Monthly Payment | | | | (13) | | |
| Key Executive Incentive Plan (KEIP) | | | | | | |
| Key Employee Retention Plan (KERP) | | | | | | |
| Norton Rose Fulbright | | | (25) | | | |
| CRO | | (40) | | | | |
| Rent | | | (23) | | | |
| Marketing | | | (3) | | | |
| Insurance | | | (146) | | | |
| E.A.G. OneSource (BPO Acct Provider) | | (33) | | | | |
| Evergreen | | | (63) | | (63) | |
| Lease Operating Expense | (200) | | (58) | (200) | (200) | |
| Capital Project AFE (Contingency) | | | | | | |
| Buy Back Gas (Chevron) | | (70) | | | | (70) |
| Semimonthly Payroll (Salary) | | | (68) | | (40) | |
| Biweekly Payroll (Hourly) | | (26) | | (7) | | (7) |
| Fidelity 401k | | | (8) | | (8) | |
| Total Cash Out | (620) | (258) | (522) | (220) | (311) | (410) |
| | | | | | | |
| Net Cash Flow / Ending Cash Balance | 2,150 | 1,892 | 1,370 | 1,150 | 839 | 1,372 |

**Trimont (NOW)**
**Cash Collateral Forecast**
**As of 1/15/24**

|  | As of 1/15/24 |
|---|---|
|  | **Debt Balance** |
|  | **$ 1,714,572** |

**East Bay**

| | | | | | |
|---|---|---|---|---|---|
| Oil Sales | 25.54 | | Oil Sales | 25.54 |
| Hedge Price | $70.98 | | Hedge Price | $70.06 |
| Gross Revenue | $1,813 | | Gross Revenue | $1,789 |

| East Bay | | | | | | |
|---|---|---|---|---|---|---|
| **Weeks** | *1* | *2* | *3* | *4* | *5* | *6* |
| **Day of Week** | *Mon* | *Mon* | *Mon* | *Mon* | *Mon* | *Mon* |
| **Date** | *1/15/2024* | *1/22/2024* | *1/29/2024* | *2/5/2024* | *2/12/2024* | *2/19/2024* |
| **($M)** | | | | | | |
| **Beginning Cash** | **4,439** | **5,607** | **4,870** | **4,192** | **3,657** | **3,481** |
| | | | | | | |
| **Cash In:** | | | | | | |
| Revenue | 1,813 | | | | | 1,937 |
| Netting Pmt | | | | | | |
| **Total Cash In** | **1,813** | **-** | **-** | **-** | **-** | **1,937** |
| | | | | | | |
| **Cash Out:** | | | | | | |
| Severance Tax | (227) | | | | | (242) |
| State Royalties | (308) | | | | | (329) |
| Monthly Fed ONRR | (10) | | | | | (4) |
| Mineral/ORRI Owners | (100) | | | | | (107) |
| Ad Valorem Tax | | (89) | | | | |
| STUSCO P&I (at 9%) | | | (150) | | | |
| LH OH Reimbursement | | | 13 | | | |
| LH P&I Reimbursement | | | 8 | | | |
| Douglas Draper | | | | | | |
| Jackson Walker | | | (8) | | | |
| US Trustee Fees (.008*disp for qtr) | | | (13) | | | |
| Chaffe Monthly Payment | | | | (13) | | |
| Key Executive Incentive Plan (KEIP) | | | | | | |
| Key Employee Retention Plan (KERP) | | | | | | |
| Norton Rose Fulbright | | | (25) | | | |
| CRO | | (50) | | | | |
| Freestone JIB | | | (220) | | | |
| Rent | | | (23) | | | |
| Marketing | | | (3) | | | |
| Insurance | | | (181) | | | |
| E.A.G. OneSource (BPO Acct Provider) | | (33) | | | | |
| RLI | | | | | | |
| Quarterly ONRR Inspection Fee | | | - | | | |
| Lease Operating Expense | | (500) | | (500) | | (800) |
| Capital Project AFE (Contingency) | | | | | (139) | |
| Buy Back Gas (Chevron) | | (25) | | | | (25) |
| Semimonthly Payroll (Salary) | | | (68) | | (30) | |
| Biweekly Payroll (Hourly) | | (41) | | (22) | | (22) |
| Fidelity 401k | | | (8) | | (8) | |
| **Total Cash Out** | **(644)** | **(738)** | **(678)** | **(535)** | **(176)** | **(1,529)** |
| | | | | | | |
| **Net Cash Flow / Ending Cash Balance** | **5,607** | **4,870** | **4,192** | **3,657** | **3,481** | **3,889** |

**EXHIBIT B**

Potential LOWLA LienHolders
Aaron Oil Company, Inc.
Acme Truck Line Inc,
B.A.I. Napa Llc
Corkern Crewboat Services, Inc.
EBI Liftboats Llc
Fast Trac Transportation, Llc
G&J Land And Marine Food Distributors, Inc
H&H Well Service, Inc.
Hlp Engineering Inc
Industrial Welding Supply Co. Of Harvey, Inc.
Island Operating Company, Inc.
John W. Stone Oil Distributors, Llc
Morris P. Hebert, Inc.
O'Brien'S Response Managment, L.L.C.
Operations & Maintenance
Premier Industries, Llc
Pressure & Flow Control Solutions Llc
Quality Process Services, Llc
Sempcheck Services Inc Solutions Llc
United Control Services Llc
United Production & Construction Services, Llc
Usa Compression Partners Lp
Whitco Supply, Llc